IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARLENE A.,<br><br>                    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of<br>Social Security,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 4:18-cv-00083-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Marlene A.'s appeal from the decision of

the Social Security Administration denying her application for supplemental security income.

The Court held oral arguments on September 24, 2019.  Having considered the arguments of the

parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court

will affirm the administrative ruling.

## I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to

determining whether his findings are supported by substantial evidence and whether the correct

legal standards were applied.[1]  "Substantial evidence 'means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"[2]  The ALJ is required to

consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]  The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II.  BACKGROUND

### A.    PROCEDURAL HISTORY

On April 17, 2014, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on June 2, 2012.[7]  The claim was denied initially and upon reconsideration.[8]  Plaintiff then requested a hearing before an ALJ, which was held on July 11, 2017.[9]  The ALJ issued a decision on August 22, 2017, finding that Plaintiff was not disabled.[10]  The Appeals Council denied Plaintiff's request for review on September 12, 2018,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

On November 14, 2018, Plaintiff filed her Complaint in this case.[13]  The Commissioner filed his Answer and the administrative record on March 1, 2019.[14]  On March 5, 2019, both

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 184–85.

[8] *Id.* at 112–16, 119–21.

[9] *Id.* at 34–61.

[10] *Id.* at 11–23.

[11] *Id.* at 1–6.

[12] 20 C.F.R. § 422.210(a).

[13] Docket No. 2.

[14] Docket Nos. 13, 14.

parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15]  Consequently, this case was assigned to Magistrate Judge Kohler pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.[16]

Plaintiff filed her Opening Brief on April 23, 2019.[17]  Defendant filed his Answer Brief on May 24, 2019.[18]

B.      MEDICAL HISTORY

The following medical evidence is relevant to the issue raised in Plaintiff's Opening Brief.

Plaintiff has a history of hearing loss.  On November 10, 2009, Plaintiff's treating physician, Donald W. Burton, M.D., stated that Plaintiff was substantially unable to communicate adequately because of her hearing loss and that the incapacity would be permanent.[19]

Plaintiff began receiving treatment from Canyon View Ear, Nose, & Throat in 2011.[20]  During an October 2011 visit, Plaintiff stated that she had occasional ear pain and that it was difficult to hear in many circumstances, even with the use of hearing aids.[21]  Her doctor noted

---

[15] Docket No. 18.

[16] Docket No. 20.

[17] Docket No. 21.

[18] Docket No. 23.

[19] R. at 487.

[20] *Id.* at 365.

[21] *Id.* at 375.

that Plaintiff had likely received the maximum benefit with hearing aids but was still unable to

hear in many circumstances.[22] As a result, her prognosis was poor.[23]

Plaintiff again presented with hearing loss on January 23, 2012.[24] Her bone conduction

was 80-90 decibels (dB) on the right and 50-80 dB on the left.[25] Her word discrimination was

75% in her right ear.[26]

In a note prepared on February 8, 2012, Lana Merchant, RN, a medical consultant with

Plaintiff's long-term disability provider, noted that Plaintiff had bilateral hearing loss to the point

that hearing aids could only detect speech that was directed toward Plaintiff.[27] It was noted that

Plaintiff's hearing was permanently impacted and would not improve.[28] As a result, Ms.

Merchant stated that it was "[r]easonable that any activity that requires hearing would be

limited."[29]

An audiogram was performed at Advanced Hearing and Balance Specialists on April 3,

2012, prior to Plaintiff's alleged onset date.[30] Plaintiff's air conduction threshold was below 90

dB.[31] Her bone conduction threshold was above 60dB at all but the lowest frequency.[32]

---

[22] *Id.* at 376.

[23] *Id.*

[24] *Id.* at 369.

[25] *Id.* at 370.

[26] *Id.*

[27] *Id.* at 495.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 420.

[31] *Id.*

[32] *Id.*

Plaintiff was again seen at Advanced Hearing and Balance Specialists for a hearing exam on April 17, 2013.[33] That examination revealed air conduction thresholds below 90 dB and bone conduction thresholds above 60 dB.[34]

In August 2013, Robert Pearson, M.D., noted that Plaintiff had "profound hearing loss."[35] However, Plaintiff could hear him if she looked directly at him when he talked.[36] In an assessment completed by Dr. Pearson, he noted that Plaintiff had profound hearing loss and was unable to hear in any circumstance.[37] He noted that Plaintiff's progress was unchanged and he did not expect any significant improvement in the future.[38]

An audiogram from April 2014 again showed air conduction thresholds below 90 dB and bone conduction thresholds above 60 dB.[39] Her speech recognition threshold was 85 dB and her speech discrimination was above 65%.[40]

On July 16, 2014, Barry Schlossberg, M.D., a state agency physician, found that Plaintiff had severe hearing loss bilaterally.[41] He noted that Plaintiff would need to have communications and instructions repeated and to observe a person's face while they were speaking.[42] However,

---

[33] *Id.* at 289.

[34] *Id.*

[35] *Id.* at 286.

[36] *Id.* at 287.

[37] *Id.* at 413.

[38] *Id.* at 414.

[39] *Id.* at 292.

[40] *Id.*

[41] *Id.* at 91.

[42] *Id.*

he concluded Plaintiff's condition was not severe enough to keep her from working.[43]  Dennis

Taggart, M.D., reached the same conclusion on March 19, 2015.[44]

On January 3, 2017, Plaintiff's treating physician, Philip E. Smith, M.D., stated that

Plaintiff was "disabled due to hearing loss which makes it difficult for her to communicate on the

phone, and even just simple conversations."[45]

C.      HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she could no longer work as an RN

because of her hearing loss.[46]  She stated that she had to constantly watch people to try to read

their lips to understand what they were saying.[47]  She further testified that if she watches

television she has to watch with closed captioning and had difficulty talking on the phone

because of her hearing loss.[48]

D.      THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's

claim.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity from her alleged onset date of June 2, 2012, through her date last insured of December

31, 2014.[49]  At step two, the ALJ found that Plaintiff suffered from the following severe

---

[43] *Id.* at 92.

[44] *Id.* at 104–08.

[45] *Id.* at 586.

[46] *Id.* at 39.

[47] *Id.*

[48] *Id.* at 44.

[49] *Id.* at 13.

impairments: asthma; disorder of the knee; hearing impairment, not treated with cochlear

implant; obesity; and sleep apnea.[50]  At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or equaled a listed impairment.[51]  At step

four, the ALJ determined that Plaintiff could not perform her past relevant work.[52]  At step five,

the ALJ found that there were jobs that exist in significant numbers in the national economy that

Plaintiff could perform and, therefore, she was not disabled.[53]

### III.  DISCUSSION

Plaintiff raises one issue in her brief: whether the ALJ erred at step three in finding that

she did not medically equal Listing 2.10.  At step three, the ALJ must determine whether a

claimant's impairments meet or equal a listed impairment.[54]  An impairment may equal a listed

impairment "if it is at least equal in severity and duration to the criteria of any listed

impairment."[55]

The Listing relevant here is Listing 2.10.  In order to meet Listing 2.10, a claimant must

have either "[a]n average air conduction hearing threshold of 90 decibels or greater in the better

ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear;"

---

[50] *Id.* at 13–15.

[51] *Id.* at 15–16.

[52] *Id.* at 20.

[53] *Id.* at 21–22.

[54] 20 C.F.R. § 404.1520(d).

[55] *Id.* § 404.1526(a).

or "[a] word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words."[56]

In conducting his step three analysis, the ALJ considered whether Plaintiff met or equaled a number of listings, including Listing 2.10. The ALJ found that Plaintiff's impairments, singly and in combination, did not meet or medically equal the criteria of this listing.[57] The ALJ stated: "No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment."[58] The ALJ went on to discuss the audiometry findings, which demonstrated that Plaintiff's hearing loss did not meet Listing 2.10.[59] Based on the evidence in the record, the ALJ found that Plaintiff did not medially equal Listing 2.10.

Here, the medical evidence demonstrates that Plaintiff did not meet Listing 2.10A. While Plaintiff's impairments met the criteria relating to bone conduction hearing threshold, they did not meet the air conduction hearing threshold. Listing 2.10A is phrased in the conjunctive, requiring both limitations be met. Plaintiff concedes that she does not meet the air conduction threshold, but is "extraordinary close."[60] This is not sufficient. Similarly, Plaintiff's word recognition scores were always above 40%. As a result, she does not meet Listing 2.10B.

Since Plaintiff does not meet a listing, the ALJ had to determine whether Plaintiff medically equaled a listing. The ALJ stated in two different portions of his decision that

---

[56] *Id.* pt. 404, subpt. P, app. 1 § 2.10.

[57] R. at 15, 17.

[58] *Id.* at 15.

[59] *Id.* at 17–18.

[60] Docket No. 21, at 11.

Plaintiff's hearing impairment did not medically equal Listing 2.10.[61]  Plaintiff complains that

the ALJ's opinion is devoid of discussion as to how he reached this conclusion.  However, SSR

17-2p states that "a statement that the individual's impairment(s) does not medically equal a

listed impairment constitutes sufficient articulation for this finding."[62]  This is so because "[a]n

adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in

the sequential evaluation process will provide rationale that is sufficient for a subsequent

reviewer or court to determine the basis for the finding about medical equivalence at step 3."[63]

Here, the ALJ's further discussion is sufficient to allow the Court to analyze the basis for the

ALJ's decision.

Thus, the question becomes whether the ALJ's decision is supported by substantial

evidence.  The ALJ's finding is supported by the opinions of the two state agency physicians.

Dr. Schlossberg specifically considered Listing 2.10.[64]  Dr. Schlossberg noted that Plaintiff had

severe hearing loss, would need to have communications and instructions repeated, and would

need to observe a person's face while they were speaking.[65]  However, he concluded Plaintiff's

condition was not severe enough to keep her from working.[66]  Dr. Taggart reached the same

conclusion.[67]

---

[61] R. at 15, 17.

[62] SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).

[63] *Id.*

[64] R. at 89.

[65] *Id.* at 91.

[66] *Id.* at 92.

[67] *Id.* at 104–08.

The ALJ gave these assessments significant weight because they were based on a review of the record and were supported by substantial evidence.[68]  A review of the record supports the ALJ's conclusion that the opinions of the state agency physicians are consistent with the medical evidence in the record.  Therefore, the ALJ could properly rely on their opinions.[69]

Plaintiff complains that the ALJ did not discuss certain evidence.  While the ALJ must consider all of the evidence, "an ALJ is not required to discuss every piece of evidence."[70]  The ALJ stated that he considered all the evidence, and the Court will take him at his word.[71]

Plaintiff also complains that the ALJ did not further develop the record.  However, Plaintiff fails to articulate what this would have accomplished.  To trigger the duty to further develop the record, there "must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation."[72]  Plaintiff has pointed to no such evidence.  Moreover, SSR 17-2p does not require the ALJ to engage in further development if, as here, he believes that the evidence does not support a finding of medical equivalence.[73]

---

[68] *Id.* at 19.

[69] 20 C.F.R. § 404.1527(c).

[70] *Clifton*, 79 F.3d at 1009–10.

[71] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

[72] *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

[73] SSR 17-2p, 2017 WL 3928306, at *4 ("If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.").

Finally, Plaintiff points to various evidence in the record that shows her hearing loss was severe. However, this evidence is not sufficient to demonstrate medical equivalency. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."[74] Plaintiff has not done this. At best, the evidence she points to demonstrates that her hearing loss was a severe impairment. As set forth above, the ALJ specifically found that Plaintiff's hearing loss was a severe impairment. The ALJ further included limitations related to her hearing loss in his residual functional capacity assessment, which Plaintiff has not challenged here. Therefore, Plaintiff's assertion of error must be rejected and decision of the ALJ will be affirmed.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision below.

DATED this 2nd day of October, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

---

[74] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).